1
2
3
4                    **UNITED STATES DISTRICT COURT**
5                        **DISTRICT OF ALASKA**
6
7
8     **DARRIN ANDERSON,**                    )
9                                             )
          **Plaintiff,**                      )     **3:18-CV-00289-JWS**
10                                            )
      **vs.**                                 )     **ORDER AND OPINION**
11                                            )
                                              )     **[Re: Doc. 17]**
12    **CITY OF SEWARD,**                      )
                                              )
13                                            )
          **Defendant.**                      )
14    _____        )

15
                          **I.  MOTION PRESENTED**
16
          At docket 17 Defendant City of Seward (the "City") moves for summary judgment,
17
      asking that the court rule in its favor as to the contract and negligence claims brought
18
      against it by Plaintiff Darrin Anderson ("Anderson").  Alternatively, it moves for summary
19
      judgment on the issue of limited damages.  Anderson opposes summary judgment at
20
      docket 19.  The City responds at docket 22.  Oral argument would not be of assistance
21
      to the court.
22
                             **II. BACKGROUND**
23
          Anderson is the owner and operator of the F/V SERENITY, a 32-foot commercial
24
      fishing vessel.  In November of 2017, Anderson planned to reconfigure his vessel to
25
      accommodate a different type of commercial fishing and to do so he had to move the
26
      vessel out of the Seward Harbor to a repair facility located multiple blocks inland.  To
27
      move the vessel required lifting and transport services.  The City provides such
28

                                       -1-

services, using travel lifts.  A travel lift is a large vehicle that positions itself over the water.  It has large nylon straps that are lowered into the water.  The vessel to be lifted drives over the straps.  The straps are then raised, lifting the vessel from underneath like a sling.  Once the vessel is lifted with the straps, the travel lift drives the vessel to its destination.

On November 10, 2017, Anderson entered into a lift agreement with the City wherein the City would lift the vessel from the water and transport it to the Rainbow Fiberglass & Boat Repair in Seward, Alaska (the "Agreement").[1]  The Agreement is a standard pre-printed, two-page form prepared by the City.  The first page is a fill-in form where information about the vessel, the owner, and transport details is provided.  The second page contains various contractual provisions related to the transport arrangement, including a paragraph about the owner's responsibilities and limitations on the City's liability.  By signing the agreement, Anderson agreed that he is "solely responsible for placing and positioning all lift slings and for ensuring that lifting slings are properly positioned prior to any lift or movement of the Vessel."[2]  Under the agreement, the City disclaimed any responsibility for the placement or positioning of lifting slings.[3]

On November 16, 2017, the City lifted Anderson's vessel out of the harbor and transported it to the repair facility.  It used its 50-ton lift to do so.  It dropped its two slings into the water and the vessel was lifted with one sling near the front and one near the back.  When the vessel was lifted, the weight of the vessel was not evenly distributed between the two slings.  The vessel was lowered, and Anderson repositioned the straps.  Once lifted, Anderson approved of the balance and location of the straps.  The parties dispute whether Anderson asked the lift operators whether they intended to tie the straps together and whether one of the operators told him that they do not tie

---

[1]Doc. 21-1 at pp. 41-42.

[2]*Id.* at p. 42.

[3]*Id.*

-2-

straps except when lifting certain sail boats. The vessel was then driven by the lift to the repair facility. As the lift was making a 90-degree turn to enter the facility, the front lifting sling slipped and the vessel fell, causing $80,000 in damage to the vessel. The vessel's insurer, Coastal Marine Fund, paid for the repairs. Anderson paid the deductible of $4,000. The parties agree that if the sling straps had been tied together, the boat would not have slipped. Anderson alleges that the City breached the agreement and acted negligently by failing to tie the straps of the lift together before transporting the vessel overland.

### III. STANDARD OF REVIEW

Summary judgment is appropriate where "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."[4] The materiality requirement ensures that "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment."[5] Ultimately, "summary judgment will not lie if the . . . evidence is such that a reasonable jury could return a verdict for the nonmoving party."[6] However, summary judgment is mandated "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial."[7]

The moving party has the burden of showing that there is no genuine dispute as to any material fact.[8] Where the nonmoving party will bear the burden of proof at trial on a dispositive issue, the moving party need not present evidence to show that summary judgment is warranted; it need only point out the lack of any genuine dispute as to

---

[4]Fed. R. Civ. P. 56(a).

[5]*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

[6]*Id.*

[7]*Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

[8]*Id.* at 323.

-3-

material fact.[9]  Once the moving party has met this burden, the nonmoving party must set forth evidence of specific facts showing the existence of a genuine issue for trial.[10] All evidence presented by the non-movant must be believed for purposes of summary judgment and all justifiable inferences must be drawn in favor of the non-movant.[11] However, the non-moving party may not rest upon mere allegations or denials but must show that there is sufficient evidence supporting the claimed factual dispute to require a fact-finder to resolve the parties' differing versions of the truth at trial.[12]

## IV.  DISCUSSION

**Duty to secure the lifting straps**

The parties agree that Anderson's vessel was damaged because the lifting strap on the front slipped off during transport and agree that had the straps been tied the vessel would not have slipped.  The City argues that pursuant to the Agreement Anderson was responsible for positioning the lifting straps and that positioning decisions necessarily include whether to tie the lifting straps together.  That is, the City argues that it assumed no duty with respect to the straps and therefore Anderson's breach of contract and negligence claims must fail.

Plaintiff asks the court to find that the Agreement is an adhesion contract and therefore void in its entirety.  An adhesion contract refers to a "standard form" contract "prepared by one party and submitted to the other on a 'take it or leave it' basis."[13]

---

[9]*Id.* at 323-25.

[10]*Anderson,* 477 U.S. at 248-49.

[11]*Id.* at 255.

[12]*Id.* at 248-49.

[13]*Standard Oil. Co. of Cal. v. Perkins*, 347 F.2d 379, 383 n.5 (9th Cir. 1965).

-4-

Courts acknowledge that adhesion contracts are entered into without "true equality of bargaining power . . . and has accommodated that reality in construing them."[14]

Even assuming that Anderson had no choice but to agree to the terms presented by the City and that the Agreement is an adhesion contract, invalidation in its entirety is not warranted. Adhesion contracts are not per se unenforceable.[15] Rather, they are simply more susceptible to a defense that the terms therein are unconscionable because the parties have not engaged in meaningful bargaining.[16] Plaintiff's reliance on *M/V Am. Queen v. San Diego Marine Construction Corp.*[17] is misplaced. While the court there stated that provisions in an adhesion contract "should not be enforced if assent to them was obtained through unequal bargaining positions wherein the weaker party had no real opportunity to negotiate the terms," such statement was dicta and was not actually applied to the contract at issue.[18] The court concluded that the contract was not one of adhesion and enforced the terms as written because it explicitly allowed for negotiated terms and there was no evidence that the employer, the drafting party, was overreaching or taking undue advantage of the employee. Indeed, the Ninth Circuit does not outright invalidate contracts of adhesion, instead looking at whether the challenged provisions are in fact unconscionable given the circumstances.[19]

---

[14]*Id.*

[15]*See Sander v. Alexander Richardson Invs.*, 334 F.3d 712, 720 (8th Cir. 2003) (citing 6A A. Corbin, Contracts § 1376, at 20-22 (1962)); Restatement (Second) of Contracts § 208 note on cmt. a (1981) ("It is to be emphasized that a contract of adhesion is not unconscionable per se.").

[16]Restatement (Second) of Contracts § 208 note on cmt. a (1981).

[17]708 F.2d 1483 (9th Cir. 1983).

[18]*Id.* at 1489; *Flores v. Am. Seafoods Co.*, 335 F.3d 904, 918 (9th Cir. 2003).

[19]*See Dempsey v. Norwegian Cruise Line*, 972 F.2d 998, 999 (9th Cir. 1992) (noting that contractual provisions are not unenforceable simply because they were not the subject of bargaining and that courts must instead examine whether the challenged provisions are unreasonable or fundamentally unfair); *Flores*, 335 F.3d at 918 (rejecting the argument that

-5-

As to the specific provision delegating responsibility for placement of the lifting straps to him as the vessel's owner, Plaintiff has presented no evidence that such a provision is unconscionable given the circumstances. The evidence shows that the provision is expected by vessel owners.[20] Indeed, he admits that such a provision "makes perfect sense" given that the City does not know the structure or layout of the underside of the vessel.[21] Therefore, the provision setting out Anderson's responsibilities in relation to the vessel transportation is reasonable and enforceable.

While the provision itself is enforceable, the parties dispute whether it reaches the offending conduct—the failure to tie the lifting straps. Such an issue is one of contract interpretation. The Agreement is a maritime one, and federal admiralty law applies. Under federal admiralty law, "[c]ontract terms are to be given their ordinary meaning, and whenever possible, the plain language of the contract should be considered first."[22] Only if the language is ambiguous—reasonably susceptible to more than one interpretation—should a court examine extrinsic evidence and look beyond the written language of the contract.[23] The introduction of extrinsic evidence injects a fact issue concerning the parties' intent that generally precludes summary judgment.[24]

---

provisions in a standard form contract are per se unenforceable absent evidence of overreaching or some "substantial injustice"); *Guangco v. Edward Shipping & Mercantile, S.A.*, 705 F.2d 360, 363 (9th Cir. 1983) (enforcing an exculpatory clause as fair and reasonable despite the fact it was included in an adhesion contract).

[20]Doc. 20 at ¶ 20; doc. 18-2 at pp. 2, 8.

[21]Doc. 19 at p. 18.

[22]*Starrag v. Maersk, Inc.*, 486 F.3d 607, 616 (9th Cir. 2007) (internal quotation marks omitted).

[23]*Fontenot v. Mesa Petroleum Co.*, 791 F.2d 1207, 1214 (5th Cir. 1986).

[24]*Teras Chartering, LLC v. Hyupjin Shipping Co., Ltd.,* No. 2:16-cv-0188, 2017 WL 2363632, at *7 (W.D. Wash. May 31, 2017) (citing *Thibodeaux v. Vamos Oil & Gas Co.*, 487 F.3d 288, 294 (5th Cir. 2007).

-6-

The provision delegating responsibilities to Anderson as the vessel's owner specifically states as follows:

> Owner Responsibilities. Owner agrees to have two adults available on site at all times preparatory to and during the move of lift of the Vessel and agrees that City's personnel will not be requested or required to go onto or into the Vessel at any time. Owner agrees that Owner is solely responsible for placing and positioning all lifting slings and for ensuring the lifting slings are properly positioned prior to any lit or movement of the Vessel. . . . [U]nder no circumstances will the City, its employees, or agents be responsible for directing placement or positioning of lifting slings on the Vessel's hull.[25]

The clear terms cover only "placing and positioning." It makes no explicit references to securing and tying once positioned. Whether "placing and positioning" meant to encompass securing of the straps after positioning is ambiguous and raises an issue of fact as to intent. Viewing the evidence in favor of Anderson and drawing all inferences in his favor, there is a disputed issue as to whether securing decisions were made or should have been made by the City.[26]

**Limited damages**

The City argues that regardless of issues of fact related to the duty to tie the lifting straps, Anderson's recoverable damages are limited. Under the Agreement the City is only liable for the "reasonable cost of repairing the Vessel" with the vessel's owner responsible for any "direct, indirect, special, consequential, or commercial damages, claims for loss of profits or earning, or other claims or damages of whatever kind or nature."[27] Under the Agreement, Anderson also "waive[d] any right of subrogation against the City which might otherwise arise upon payment of a loss by [his] insurers."[28] It is undisputed that Anderson's insurance paid for the vessel's repair

---

[25]Doc. 21-1 at p. 42.

[26]Doc. 20 at ¶¶ 21-23; doc. 21-1 at pp. 50-51; doc. 21-1 at p. 55.

[27]Doc. 21-1 at p. 42.

[28]*Id.*

-7-

1    and therefore the City argues that Anderson's damages are limited to recovery of his

2    insurance deductible.

3           Anderson does not contest the meaning of the relied upon terms, nor does he

4    provide a specific argument as to why these provisions limiting the City's liability for

5    damages should not apply.  The only argument presented is that the Agreement itself is

6    unconscionable.  As noted above, the fact that the Agreement is a non-negotiated,

7    standard form contract does not make it unenforceable per se.  Rather, it is simply

8    susceptible to the defense of unconscionability.  The court looks to the specific

9    provisions within the agreement to determine whether applying those provisions would

10   be unreasonable or fundamentally unfair given the circumstances.  Provisions that limit

11   consequential damages have been deemed commercially reasonable and

12   enforceable.[29]  The same is true of waiver of subrogation clauses.[30]  The Agreement is a

13   two-page contract with one page of legal provisions, and Anderson is a "lifelong

14   commercial fisherman" with experience in arranging for overland transportation of his

15   vessel.[31]  Plaintiff provides no evidence of overreaching by the City or that the otherwise

16   reasonable contractual provisions limiting damages and waiving the right to subrogation

17   are oppressive or unreasonable when applied to him and the circumstances

18   surrounding the Agreement.

19

20

21

22   [29]*See Marr Enters., Inc. v. Lewis Refrigeration Co.*, 556 F.2d 951, 958 (9th Cir. 1977)
     (applying Washington's version of the UCC to a contract for the sale of a refrigeration system in
23   a fishing vessel to find that the contract's limitation on damages was enforceable);
     AS 45.02.719 (specifying that limitation on consequential damages in commercial contract are
24   per se enforceable).  While the Agreement is not a sales agreement, the Ninth Circuit has
     recognized that the UCC is a source of the federal common law.  *See O'Neill v. United States*,
25   50 F.3d 677, 684 (9th Cir. 1995).

26   [30]*See Dillingham Tug & Barge Corp. v. Collier Carbon & Chem. Corp.*, 707 F.2d 1086,
     1090 (9th Cir. 1983); *Fluor W., Inc. V. G & H Offshore Towing Co.*, 447 F.2d 35, 39-40 (5th Cir.
27   1970).

28          [31]Doc. 20 at ¶¶ 4, 22.

-8-

## V. CONCLUSION

Based on the foregoing, the City's motion for summary judgment at docket 17 is GRANTED IN PART AND DENIED IN PART. Summary judgment is not warranted as to Plaintiff's claims, but his recovery is limited to his insurance deductible under the Agreement.

DATED this 28th day of July 2020.

/s/ JOHN W. SEDWICK
SENIOR JUDGE, UNITED STATES DISTRICT COURT

-9-